**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE**

Civil Case No. 05-cv-02122-LTB-OES

FRED LADD and
LORETTA SUZANNE LADD,

    Plaintiffs

v.

RESEARCH TRIANGLE INSTITUTE, a North Carolina corporation, also known as
RESEARCH TRIANGLE INSTITUTE INTERNATIONAL,

    Defendant.

_____

**Order**
_____

Plaintiff Fred Ladd ("Ladd") sues defendant Research Triangle Institute ("RTI") for negligence that caused severe injuries to Ladd when he was a contract employee in Iraq. RTI moves to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2); or, in the alternative, to transfer the case pursuant to 28 U.S.C. § 1404. For the reasons stated below, RTI's motion is GRANTED, in part and DENIED, in part.

**I.  BACKGROUND**

Ladd is a Colorado-based engineer, specializing in municipal utilities. RTI is a North Carolina not-for-profit corporation. It has approximately 2600 employees, and in 2005 had overall revenues of more than $465,000,000. These include about $141,000 in revenue from seven projects in Colorado. RTI had three employees in Colorado at the time of this suit. At the times relevant to this claim RTI had a contract with the United States Agency for International

Development ("AID") for civilian reconstruction in Iraq. Chemonics International ("Chemonics"), not a party to this suit, was a subcontractor to RTI on this project.

In September of 2003 Chemonics recruited Ladd to provide technical assistance and related services in Iraq, as part of this AID project. The record does not state how Chemonics first became interested in Ladd, but it is not disputed that Chemonics contacted Ladd by telephone in Colorado, discussed employment with him, and mailed him an employment agreement.

While the employment agreement is ostensibly between Ladd and Chemonics, the agreement provides a significant role for RTI and AID. The agreement states that Ladd's hiring is conditional on RTI and AID approval, that the contract "terms of reference" are subject to change at any time by Chemonics, RTI or AID; that Ladd may not hold Chemonics liable in any way for changes in the scope or nature of the work directed by Chemonics, RTI or AID; and that Ladd will report in Iraq to an RTI official who will monitor Ladd's performance.

The employment agreement contains a provision stating that "This employment is conditional upon clearance of the required medical exam." It also states, above the signature line, "Acceptance of the terms of this agreement shall be indicated by both parties on the lines provided below and by initialing each page of this agreement." When Ladd received the agreement in Colorado, it already contained the signature of a Chemonics official, dated September 5, 2003. It did not contain signatures or initials on the relevant lines at the bottom of each page. Ladd signed the agreement on the signature page, but not on the bottom of each page, on September 11, 2003 and mailed it back to Chemonics. A few days later, Chemonics flew Ladd to Washington D.C. where he took and passed a physical exam, and obtained the necessary approvals from RTI and AID. At this time, Ladd and two Chemonics' officials signed or initialed the bottom of each page

2

of the employment agreement.

Ladd then attended RTI training in North Carolina, which included information about the vehicles and communications equipment the employees would use in Iraq. Ladd states that at this training RTI assured him that while in Iraq he would use American-made vehicles in good condition, that these vehicles would have rear exit doors, first aid supplies and communications equipment, and that he would travel with two vehicles with two security guards and two drivers. RTI denies that it gave Ladd these assurances.

Once deployed in Iraq, Ladd was based in Al Kut. On or about October 27, 2003, Ladd was directed to travel to another city about 18 miles from Al Kut, close to the Iranian border. Ladd states that he traveled in an old Iraqi vehicle, without a back door, with one driver and one security guard. The vehicle lacked communication equipment or first aid supplies. During the trip, the driver lost control of the vehicle and the vehicle went off the road and into the Tigris River. Ladd suffered severe injuries, including broken bones, fractures and infections. As a result of these injuries, Ladd is now essentially totally disabled. The Ladds filed this negligence suit against RTI on October 24, 2005.

## II.  COLORADO WORKERS COMPENSATION ACT

RTI argues that Ladd has failed to state a claim under Rule 12(b)(6) because his claim is subject to the exclusivity provisions of the Colorado Workers Compensation Act, ("CWCA"), Col. Rev. Stat. § 80-40-101 *et seq.* As a preliminary matter, a motion to dismiss a claim as barred under CWCA's exclusivity provision falls under Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction, not Rule 12(b)(6). *Stuart v. Colorado Interstate Gas Co.* 271 F.3d 1221, 1224-1225 (10th Cir. 2001). Under Rule 12(b)(1), unlike Rule 12(b)(6), I have wide discretion to consider

information outside of the pleadings without converting the motion into a Rule 56 motion for summary judgment. *Id.*

The CWCA provides that an employee's sole remedy for personal injury is through the workers compensation system. Employees may not bring other causes of action against their employer for work related injuries. Col. Rev. Stat.§ 8- 41-104. The CWCA covers injuries outside of Colorado to workers "hired" in Colorado or who are "regularly employed" in Colorado. Col. Rev. Stat. § 8-41-204. RTI contends that the CWCA bars Ladd's tort claims because he signed his employment contract in Colorado, and so was hired in Colorado under the CWCA. Ladd responds that the CWCA does not bar his claims because he was not hired in Colorado under the CWCA, and because federal law preempts the CWCA. I will consider Ladd's second argument first.

Ladd contends that his contract with Chemonics is governed by the Longshore and Harbor Worker's Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.,* and the Defense Base Act, ("DBA"), 42 U.S.C. § 1651, *et seq.* The LHWCA provides a uniform system of workers compensation for employees injured in the maritime field. *Davila-Perez v. Lockheed Martin Corp.,* 202 F.3d 464, 466 (1st Cir. 2000). The DBA extends this system of coverage to employees of Government contractors and subcontractors doing public works overseas. 42 U.S.C. § 1651(a). The liability of an employer under the DBA and the LHWCA is "exclusive and in place of" liability for any state law claim for injury or death. 33 U.S.C. § 905(a).

An exception to this liability shield applies to general contractors who do not provide workers compensation to the employees of their subcontractors, where the subcontractors do provide compensation. 33 U.S.C. § 905(a). *See also Louviere v. Marathon Oil Company,* 755

F.2d 428, 429-430 (5th Cir 1985). General contractors in this situation are not statutory employers under the DBA and are not protected from common law suits. *Id.* The record is clear that Chemonics is providing compensation under DBA to Ladd, and Edward Story, RTI's Vice President for Contracts and Procurement, has testified that RTI did not provide this coverage. Under the DBA and the LHWCA, RTI is not immune from Ladd's claim.

However, simply because RTI does not enjoy DBA/LHWCA immunity does not mean that RTI loses its state law liability shield. In general, the LHWCA does not pre-empt state workers compensation systems. *See Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 722 (1980). These compensation systems operate concurrently. *Id.* Ladd identifies no authority, and I am not aware of any, stating that the LHWCA, by providing a general contractor limited immunity from suit, somehow operates to override an employer's immunity under state law. To the contrary, the First Circuit has concluded just the opposite. In *Vega-Mena v. United States,* 990 F.2d 684, 692 (1st Cir. 1993), the Court held that Puerto Rico's worker compensation law provided employer immunity broader than that provided by the LHWCA, and so it continued to protect an employer from suit by its subcontractor's employees even when federal law did not. The court's conclusion applies directly to the facts here: "[A]lthough section 905(a) does not *give* the (employer) immunity from appellant's suit, neither does it *take away* the immunity separately created by Puerto Rico's workmen's compensation laws." *Id.* (emphasis in original.)  The Fourth Circuit, analyzing South Carolina workers compensation laws, reached the same conclusion. *Garvin v Alumax of South Carolina, Inc.,* 787 F.2d 910, 916-917 (4th Cir. 1986). Based on this authority, I conclude that the DBA/LHWCA, while not barring Ladd's suit, also does not pre-empt the immunity created by the CWCA.

Ladd also argues that the CWCA does not apply because he was not hired in Colorado. Citing *Denver Truck Exchange v. Perryman,* 307 P.2d 805, 810 (1957), Ladd contends that the location of the formation of his contract is governed by where "the last act necessary" to complete the contract was performed. While Ladd signed the employment agreement on September 11, 2003 in Colorado, the agreement was not completed until he passed his physical examination and the parties signed or initialed the bottom of each page, as the contract explicitly required. It is undisputed that these acts occurred in Washington, so for CWCA purposes, Ladd was hired in Washington and the CWCA does not apply. Ladd also states that he understood that his employment with Chemonics was not final until all of these steps were taken, that his September 11, 2003 signature was not binding and that approval from RTI and AID was necessary before the contract could be final.

RTI responds that the "last act necessary" doctrine for contract formation does not control. Citing *Moorhead Machinery & Boiler Co. v. Del Valle,* 934 P. 2d 861, 864 (Colo. App. 1996), RTI contends that the technical application of contract formalities does not determine CWCA jurisdiction. *Id.* Rather, it is sufficient if the "fundamental elements of contract formation are present." In *Moorhead,* an employer used a union hiring hall in Denver to hire a worker for a job site in Wyoming. *Id.* at 863. The union contacted the plaintiff in Colorado, who agreed to report to Wyoming for the job. *Id.* Once there, his hiring was contingent on completing a medical questionnaire. *Id.* By filling out the questionnaire, the plaintiff "accepted a conditional offer of employment," "contingent upon the satisfactory result of the medical inquiry." *Id.* After plaintiff reported, he was still free to reject the job. *Id.* The employer also could reject the plaintiff if he lacked the necessary skill or medical requirements. *Id.* The Court found that the essential elements

6

of contract formation were satisfied once the plaintiff left home for the Wyoming job site, since the terms and conditions were known to him when the union contacted him. *Id.* at 864. RTI contends that the principles of *Moorhead* establish that Ladd's contract was made in Colorado and that the CWCA applies. I disagree. The *Moorhead* court emphasized that this situation – a Denver union hiring hall recruiting workers and sending them to Wyoming – was the normal practice for the employer and for the union. There is no evidence on the record here of a normal practice similar to a union hiring hall system. The record does not address whether the final steps necessary here – the physical exam, the approvals by AID and RTI, the final signatures – are Chemonics' routine practices that virtually never impede employment, or are unique to this contract. By contrast, in *Moorhead* the defendant's field supervisor could recall only one instance in two years when someone hired in this fashion had been rejected. Additionally, in *Moorhead* both parties understood the final steps at the job site to be mere formalities. The employee testified that he "regularly" received work from the union through this system. Here, there is conflicting affidavit testimony as to what the parties understood. Chemonics' personnel supervisor Kevin Duffy states that Ladd became a Chemonics employee when he signed the employment agreement, that the additional steps were a "mere formality," and that passing a physical exam and gaining approval from RTI and AID were requirements of the contract, not preconditions to making a contract. Conversely, Ladd states that he understood the signing of the agreement to be "notification to whomever that I had been contacted and recruited first by Chemonics," but not a "binding contract." In light of the absence of evidence of a normal practice, understood by both parties to mean that the final steps were mere formalities, and the conflicting affidavits as to the parties' understanding at the time, I cannot conclude that Ladd was hired in

7

Colorado, and so the CWCA does not bar Ladd's claims.

### III.  LACK OF PERSONAL JURISDICTION

RTI moves also to dismiss for lack of personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Far West Capital, Inc., v. Towne,* 46 F.3d 1071, 1075 (10th Cir. 1995).  When the issue is raised before trial and decided on the basis of affidavits and other written materials, a plaintiff need only make a *prima facie* showing. *Id.*  I must resolve all disputed facts and draw all reasonable inferences in the plaintiff's favor. *Id.* However, "only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Wenz v. Memery Crystal,* 55 F.3d 1503,1505 (10th Cir. 1995.)

Jurisdiction of the district court in diversity cases is governed by the law of the forum state. *Id. at* 1506.  In Colorado, jurisdiction is governed by the state's Long Arm Statute, Col. Rev. Stat. § 13-1-124, which extends to the full extent of the constitution's due process clause. *Waterval v. District Court In and For El Paso County*, 620 P.2d 5, 8 (Colo. 1980).  So my only concern is whether allowing jurisdiction in Colorado offends due process. *See Kuenzle v. HTM Sport-Und Freizeitherate AG,* 102 F. 3d 453, 455 (10th Cir. 1996).

Personal jurisdiction is proper under the Fourteenth Amendment if a nonresident defendant has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The minimum contacts standard may be satisfied either through general or specific jurisdiction. RTI contends that jurisdiction is lacking under either approach.

8

A. Specific Jurisdiction

A court may exercise specific jurisdiction if a defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). The defendant's forum state activities "must render it foreseeable that the party should reasonably anticipate being haled into the forum court." *In re application to Enforce v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996.)

Even if a defendant has sufficient minimum contacts to justify jurisdiction, due process requires that I further consider whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. *Intercon*, *Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir. 2000). This fairness inquiry requires considering the following factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 113 (1987).

Ladd argues that specific jurisdiction is justified because RTI purposefully directed its activities into Colorado through the actions of its agent, Chemonics, when Chemonics telephoned Ladd in Colorado to recruit him for the Iraq project, and mailed him the employment contract. This argument necessarily depends on two propositions: that Chemonics acted as RTI's agent when it recruited Ladd and that Chemonics' dealings with Ladd in Colorado are sufficient to confer jurisdiction over RTI.

9

An agency is a "fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *City and County of Denver v. Fey Concert Co.,* 960 P.2d 657, 660 (Colo. 1998). The record contains significant evidence that Chemonics acted as RTI's agent in its role as subcontractor. Chemonics recruited employees to work on a pre-existing RTI contract with AID. RTI had final approval of the hiring of Ladd. The employment agreement states specifically that Ladd was to report to RTI, that an RTI official was responsible for monitoring Ladd's performance, that Ladd's salary was subject to RTI's approval, and that RTI or AID could amend the contract scope at any time. Ladd received training from RTI prior to his deployment in Iraq. These facts all show that RTI had substantial control over Chemonics' decision to hire Ladd and over Ladd's work during his job in Iraq.

However, to resolve this jurisdictional issue I analyze not whether Chemonics' acted as RTI's agent for holding RTI liable for Ladd's injuries, but the narrower issue of whether Chemonics' acted as RTI's agent when it reached into Colorado to recruit Ladd. While in a motion to dismiss for personal jurisdiction, I must give every factual doubt to the plaintiff and resolve conflicting affidavits in the plaintiff's favor, Ladd has alleged no facts suggesting that Chemonics acted as RTI's agent in recruiting him. Ladd has not alleged that RTI directed Chemonics to recruit Ladd specifically, or that RTI directed Chemonics specifically to recruit in Colorado. Conversely, RTI provides the affidavit of Peter Benedict stating that Chemonics was responsible for providing personnel who met certain criteria, but that RTI provided Chemonics with no other requirements for where or whom to recruit. Chemonics was free to recruit in all 50 states. Under Ladd's argument, Chemonics' contacts can be attributed to RTI – and jurisdiction is

appropriate over RTI – in any state where Chemonics chose to recruit. This is precisely the kind of "unilateral activity" of a third party that cannot be the basis of jurisdiction. *Doe v. National Medical Services,* 974 F.2d 143, 145 (10th Cir. 1992).

Moreover, jurisdiction is inappropriate even if Chemonics' recruitment of Ladd is attributable to RTI. Jurisdiction requires, in addition to purposeful availment, that Ladd's claims are "based upon injuries which arise out of or relate to the defendant's contacts with the state." *Id.* Ladd's claim against RTI is for personal injury resulting from RTI's negligence in failing to ensure his safety and security in Iraq. In Colorado, a tortious act confers jurisdiction only if either the tortious act occurs in Colorado or if tortious conduct outside of Colorado causes an injury in Colorado. *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235-236 (Colo. 1992). Ladd's claim fails both tests. Ladd was injured in Iraq, and RTI's purported negligence in ensuring his safety occurred in Iraq. Even though Ladd was in Iraq pursuant to a contract negotiated at least in part in Colorado, the contract itself is silent regarding any duties by Chemonics or RTI to provide drivers or to ensure safety and security. Ladd himself states that RTI's assurances about safety and security were at a training in North Carolina, independent of Chemonics' interactions with Ladd in Colorado. While Ladd continued to suffer from his physical injuries when he returned to Colorado, a plaintiff's economic and personal injuries in his home state cannot, by themselves, establish Colorado jurisdiction. *Wenz,* 55 F.3d at 1507-1508. In sum, Ladd has failed to make a *prima facie* for specific personal jurisdiction.

B.   General Jurisdiction

Where a plaintiff's cause of action does not arise from the defendant's forum-related activities, a court may still exercise general jurisdiction based on a defendant's overall contacts

with the forum state. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998). General jurisdiction imposes a "more stringent" test than specific jurisdiction. *Id.* To justify general jurisdiction, a defendant's contacts must be "continuous and systematic," *Id,* and "substantial." *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F. 3d 1523, 1533 (10th Cir. 1996). Among the factors courts consider to determine general jurisdiction are:

> "(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation." *Id.*

RTI has conducted approximately $2 million worth of business in Colorado during the years 2000- 2005, through 80 projects for Colorado clients. This represents less than .1% of RTI's overall national revenue for the six year period. Only two of the projects from 2000 - 2005 involved any travel by RTI employees to Colorado, totaling only five trips. RTI also has had six employees who were based in Colorado from 2003 to the present, all of whom telecommute. One of these employees resigned in 2003. RTI has no local office in Colorado, owns no property in Colorado, does not have a registered agent in Colorado, does not advertise in or direct advertising towards Colorado and owns no bank or brokerage accounts in Colorado.  RTI's ties to Colorado fall far short of the "continuous and systematic" connections necessary to support general jurisdiction.

### IV.   MOTION TO TRANSFER UNDER 28 U.S.C. § 1404

RTI moves this Court, if it allows the case to proceed, to transfer this case to the Eastern District of North Carolina, pursuant to 28 U.S.C.  § 1404.  Section 1404 allows a district court to

transfer a case to another district, "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).  I may only transfer a case to a district where there would be personal jurisdiction over the defendant. *Hoffman v. Blaski,* 363 U.S. 335, 343-344 (1960).

Ladd urges me to transfer venue even if I find a lack of jurisdiction, arguing that his claims may be time-barred if he must file anew in another jurisdiction. I am sympathetic to this argument. The appropriate mechanism to transfer a case where a district court lacks jurisdiction is not § 1404 but 28 U.S.C. § 1631. *See Ross v. Colorado Outward Bound School, Inc.* 822 F.2d 1524, 1526-1527 (10th Cir. 1987). Section 1631 allows a court that lacks jurisdiction to "in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." The action "shall proceed as if it had been filed or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred." This specifically protects Ladd against the possibility that his claims may be time-barred.

I next must decide to which district to transfer this case. RTI contends that North Carolina is preferable because more witnesses are likely based in North Carolina, most of the relevant documents are in North Carolina and while North Carolina is inconvenient for Ladd, it is more convenient for RTI.  Ladd disputes these points, arguing that more witnesses are likely in Colorado, and that the burden on him to travel to North Carolina, in light of his medical condition, is far greater than the burden on a large corporation like RTI. Ladd also provides the affidavit testimony of his attorney stating that RTI's large corporate presence in North Carolina renders a fair trial there unlikely. Ladd suggests that if the case must be transferred, it be transferred to San Francisco, where RTI has a corporate office.

I am constrained under § 1631 to only transfer to a district where jurisdiction would be appropriate. RTI has admitted that its principle place of business is North Carolina, so there is no question that there is jurisdiction there. Ladd asserts that RTI has a corporate office in San Francisco, but I cannot on this basis alone conclude that personal jurisdiction is appropriate there. Moreover, San Francisco is not convenient for witnesses and will require plane travel by both parties. Ladd's argument, based on his attorney's affidavit, that RTI's corporate presence precludes a fair trial in the Eastern District of North Carolina, is not persuasive. The courts of North Carolina have the same ability to ensure fair trials as any other court. I therefore conclude that, in the interests of justice, this case shall be transferred to the Eastern District of North Carolina, pursuant to 28 U.S.C. § 1631.

It is so ORDERED that, RTI's motion to dismiss or in the alternative to transfer (Docket # 13) is GRANTED, in part, and DENIED, in part, as follows,

1) RTI's motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is DENIED;

2) RTI's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is GRANTED, and

3) This case is transferred, pursuant to 28 U.S.C. § 1631, to the Eastern District of North Carolina.

**DONE and ORDERED,** this ___18th___ day of September, 2006 at Denver, Colorado.

                s/Lewis T. Babcock
                United States District Chief Judge